NichoIiSON, C. J.,
delivered the, opinion of the court.
In 1853 J. M. Heiskell was the owner of a tract of land of 131 acres, situated on Baker’s Creek in Blount county, on which was a mill operated by an undershot wheel. He desired to improve the capacity of his water-power and the character of his machinery by obtaining his power from an overshot instead of an undershot wheel. To do this it was necessary to erect a dam across the creek about four hundred yards above his mill, but at that point he owned the land on but one side of the creek, the other bank being *642 •owned by Sylvester Cobb. He applied to Cobb for permission to use his bank of the creek in making his new dam. Cobb not only gave his consent, but •encouraged him to do so, and assisted him in work both on the dam and the race. At the time Heis-kell agreed with Cobb that if Cobb should at any lime desire him to put up machinery for a carding machine on the creek, Heiskell was to let him have a site on his land between the new dam and the mill-house.
In pursuance of this verbal agreement Heiskell erected the dam, made his race, and changed his machinery to run with an overshot wheel. The building of .the dam caused the water to flow back upon Cobb’s hind somewhat more than it did when the old dam at the mill was in existence. Cobb lived three years after the building of the dam, making no complaint of any damage, acquiescing in the permission he had given to erect the dam on his bank, and being satisfied with the arrangement. Upon his death, in 1856, the title to his land descended to his minor heirs, none of whom set up any objection to the existence of the dam; although, in 1868, it had been repaired by Heiskell, and a few feet moi’e of their bank used in lengthening the wing of the dam. But most of them sold and conveyed their interest to E. S. Cobb, one of the heirs, who now owns the land. He set up no complaint as to the dam of Heiskell until about 1867, when he determined to erect a saw mill and to run it. by drawing the water from Heishell’s dam, carrying it by a race to his machinery, and dis *643 charging it back into the creek through Heiskell’s •land, returning it below Heiskell’s dam. This bill was filed by Heiskell, alleging the facts stated, and •obtaining an' injunction against the proposed withdrawal •of the water from his dam. The injunction was granted.
Thereupon E. S. Cobb filed his answer and cross bill, in which he admitted the main allegations in Heiskell’s bill, but insisting that he was not bound by the parol license given by his father to erect the ■dam, charging that by the throwing the water back his land was overflowed and damaged, and that the machinery of a carding machine which he had erected since the filing of the bill was interfered with, and praying for relief against the nuisance created by Heis-kell’s dam, and claiming damages, etc.
Proof was taken on both sides, and upon the hearing the Chancellor gave Heiskell the relief prayed for, and dismissed the cross bill of Cobb. Prom this decree Cobb has appealed. The material allegations of the bill are well sustained by the proof. It is clearly shown that the dam was erected with the full consent of Sylvester Cobb, the then owner of the land; that he contributed his own work in building the dam and making the race, and that down to his death, in 1856, he continued to accpiiesce in the existence of the dam. It is further shown that after his death, and down to 1867, none of the heirs of Sylvester Cobb made any objection to the appropriation o.f the land used in the erection of the dam. The proof makes out a continuous adverse possession and appropriation of the *644 land and of the water of the creek of fourteen or fifteen years. The claim of Heiskell, though originally by parol license, and therefore permission, was a claim for himself, and not in subordination to Sylvester Cobb or his heirs, but his occupancy and claim to the use of the dam and the water was strictly adverse to all others.
Heiskell relies upon this adverse possession for more than seven years as conferring upon him such a defensive or possessory title as authorizes him to claim the relief prayed for. It is apparent that Heiskell’s possessory right is established by the proof, whether the term be extended from 1853, when the dam was built, or from 1856, when Sylvester Cobb died. In the latter case the bar of seven years had become perfect before the act of the Convention in 1865 in suspending the operation of the statute from May', 1861, to January 1, 1867, was adopted. Whether tife-permission or license was revoked by the death of Sylvester Cobb is an immaterial question, as the bar was complete by reason of adverse possession of more than seven years, whether we count from the time the license was given by Cobb in 1853, or from his death in 1856. But it is well settled that as the statute commenced running against Sylvester Cobb it would continue to run against his heirs, and would be perfected into a bar by adding the time elapsing during the life-time of Cobb to that elapsing after his death, provided there was no revocation before the expiration of the seven years. Such was the case here. Angelí on Waters, secs. 210, 239.
*645 It follows that although Heiskell could not acquire an easement in the land and water by mere operation of the parol license, yet by reasón of his adverse possession of seven years he acquired ' such a right as would enable him to defend his possession at law, and to protect it in equity against invasion.
But his claim to relief rests upon another ground which is equally conclusive. It is fully proven not only that the new dam was built by the license of Sylvester Cobb, but that he stood by, encouraged and assisted him in expending his labor and money in making valuable and permanent improvements upon the faith of the license. . This furnishes a clear case for the application of the doctrine of equitable estoppel, which is in operation not only against Cobb himself, •but his privies. Angelí on Watercourses, 516 to 521.
We are, therefore, of opinion that there is no error in the decree of the Chancellor, and affirm it with costs.